IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KAYAK SOFTWARE
CORPORATION, d/b/a KAYAK.COM,

        Plaintiff,

v.

MICHAEL A. KING.,

        Defendant.

CIVIL ACTION NO.

## COMPLAINT AND JURY DEMAND

Kayak Software Corporation, d/b/a Kayak.com ("Kayak"), brings this civil action against Michael A. King ("King").

## THE PARTIES

1.    Kayak is a Delaware corporation with a place of business at 300 Baker Avenue, Concord, MA, 01742.

2.    On information and belief, King is an individual residing in the State of California, having a principal place of business at 3395 South Jones Boulevard, Las Vegas, NV 89146.

## JURISIDICTION

3.    This is an action arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. This Court therefore has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 2201-2202. In addition, Kayak is a Delaware corporation, King is a California resident, and the amount in controversy is believed to exceed

$75,000. As a result, jurisdiction is also proper under 28 U.S.C. § 1332. Jurisdiction over the state law claims is proper under 28 U.S.C. § 1367.

4. Venue is appropriate under 28 U.S.C. § 1391(b).

5. This Court has personal jurisdiction over King because King has taken actions specifically and repeatedly threatening a Massachusetts resident (Kayak) with a lawsuit for alleged infringement of King's trademark rights and unfair competition (see below). Moreover, King maintains a website accessible in Massachusetts whose domain name contains the disputed trademark, and on information and belief sells a magazine containing his alleged trademark throughout the United States, including to Massachusetts residents.

## BACKGROUND

6. Kayak is a well-respected provider of services relating to on-line travel searching. Through its web site http://www.kayak.com, Kayak aggregates information from hundreds of other travel sites and helps users book flights, hotels, cruises, and rental cars. Kayak combines results from online travel agencies, consolidators such as Orbitz, and other sources such as large hotel chains.

7. At least since October 2004, Kayak has used marks incorporating the word KAYAK (the "KAYAK Marks") in association with various on-line services relating to travel, including on-line price comparisons of travel and lodging services, providing travel information over global computer networks, providing an internet search engine to assist travelers to locate and compare prices and ratings for travel reservations, and travel agency services such as making reservations and booking for temporary lodging. Such services are sold in association with the KAYAK Marks, which include KAYAK and KAYAK.COM.

8. Through Kayak's efforts and diligence, its KAYAK marks have become well known and its services, including travel services, are currently provided throughout the United States under those marks. Millions of dollars of services have been provided under the KAYAK marks exclusively by Kayak over the past seven years, to many thousands of customers.

9. By virtue of the longstanding popularity of the KAYAK marks and their expanding continuous use throughout the United States and elsewhere for on-line travel searching services, Kayak's rights in the marks, both statutory and at common law, have become exceptionally valuable property rights.

10. Kayak also owns multiple United States Trademark Registrations for the KAYAK Marks, including without limitation: Registration No. 3,410,425 for KAYAK.COM in classes 41 and 42 for providing on-line information in the field of entertainment and non-downloadable computer software featuring geographic maps, travel route information and recommendations, and travel information guides; Registration No. 3,209,578 for KAYAK in classes 38 and 41 for providing on-line chat rooms and on-line bulletin boards for transmission of messages among computer users in the travel community and on-line information featuring schedules, listings, reviews, postings, or locations in the field of entertainment; Registration No. 3,129,154 for KAYAK.COM in classes 35, 38, and 41-43 for providing on-line price comparisons of travel and lodging services, online communications links that transfer the website user to others' local and global web pages and web sites, travel information over global computer networks, online publications, an internet search engine to assist travelers to locate and compare prices and ratings for travel reservations, and travel agency services such as making reservations and booking for temporary lodging; and Registration No. 3,110,651 for KAYAK in classes 35, 39, and 42 for providing on-line price comparisons of travel and lodging services, travel information over

global computer networks, and an internet search engine to assist travelers to locate and compare prices and ratings for travel reservations. (Exhibits A-D).

11.     Through extensive marketing, advertising, and sales Kayak's KAYAK Marks have become well known, and the services sold in association with these marks have acquired significant good will and a reputation for quality.

12.     On information and belief, long after Kayak established rights and substantial reputation and fame in the KAYAK Marks, King began selling magazines, printed instruction manuals, and newsletters in the field of canoeing, kayaking, and fishing under the mark KAYAK ANGLING. United States Trademark Registration No. 2,996,159 (the "'159 Registration") for KAYAK ANGLING for these products was issued to King on September 13, 2005 on the Supplemental Register, with a first use in commerce date of June 2005. (Exhibit E).

13.     On information and belief, at some point thereafter King registered or acquired, and in any event claims to own, the domain name http://www.kayak.travel, though the registrar's records show a different registrant. This domain name does not currently resolve to a web page, but instead re-directs to the website http://www.alaskakayak.com/, a website related to kayaking adventures in Alaska. (Exhibit F). This website is operated by Backcountry Safaris, an entity apparently unrelated to King. King does not provide any travel services, or any services (or goods) at all, at his www.kayak.travel domain.

14.     On information and belief, King's use of his www.kayak.travel domain name has caused and is likely to continue to cause confusion among relevant purchasing consumers for the parties' services. Relevant consumers are likely to assume that King's website is provided or sponsored by Kayak, or that the businesses and marks are commonly controlled.

15. On information and belief, King's adoption of his www.kayak.travel domain name commenced with the full knowledge of the prior use and substantial fame of the KAYAK Marks owned by Kayak, and with the intent to trade on the good will previously established by Kayak.

16. On information and belief, King continues to maintain his www.kayak.travel domain name under the KAYAK Marks, thereby attempting to capitalize on the good will in the KAYAK Marks, owned by Kayak long prior to King's adoption of those marks.

17. Kayak's common law and registered rights in the KAYAK Marks for on-line travel searching services long pre-date King's uses of KAYAK for any services.

18. King's use of his www.kayak.travel domain name is likely to cause confusion or mistake or to deceive consumers, who are likely to think that his website originates with or is associated with Kayak.

19. King could not validly establish rights in his www.kayak.travel domain name, since any use of that domain name was an infringement of Kayak's rights in the KAYAK Marks.

20. Kayak has placed King on actual notice of the similarity and likelihood of confusion between his newly adopted www.kayak.travel domain name and Kayak's KAYAK Marks. Indeed, at one time, King redirected traffic from www.kayak.travel to Kayak's domain of www.kayak.com, giving visitors the distinct impression of a relationship between the sites and, therefore, their owners, before Kayak told him to remove that linkage.

21. Despite such notification, King disregarded Kayak's rights and continues to maintain the infringing domain name.

22. On November 17, 2010, Kayak filed a registration statement on Form S-1 with the United States Securities and Exchange Commission for a proposed initial public offering.

That statement listed a number of other entities who had invested in Kayak or that would be assisting Kayak with the underwriting and management of the public offering.

23. In or around February 2011, King (through counsel) contacted Kayak, alleging that Kayak had infringed on King's rights. King alleged that Kayak's operation of its www.kayak.com website infringed on King's use of KAYAK ANGLING on his magazine products, his '159 Registration, and his (later-registered) www.kayak.travel website.

24. In response to King's allegations, Kayak's counsel responded that Kayak's uses of its KAYAK Marks do not infringe the '159 registration or any of his other alleged property rights. Kayak maintained that it had done nothing to harm King, and that King's www.kayak.travel domain name registration infringed on Kayak's rights in the KAYAK Marks.

25. On March 3, 2011, King's counsel sent an email to Kayak's counsel in Massachusetts, stating that "[m]y client has advised me that he will be filing the attached complaint in pro per within the next few days." Attached was a draft, *pro se* complaint, charging Kayak with trademark infringement and unfair competition under the Lanham Act, and unfair competition under a California statute, for Kayak's use of its KAYAK Marks. In the draft complaint King also named all of the entities assisting Kayak in its public offering, as well as Does 1-100 – presumably intended to cover existing and future investors in the public offering.

26. The clear import of this correspondence was that King contends that Kayak has infringed his alleged rights in the '159 registration and in the KAYAK ANGLING mark and the www.kayak.travel domain, that King contends that Kayak has committed unfair competition against him, that King contends he has been damaged by that alleged infringement, that King contends he has been irreparably harmed by the alleged infringement, and that King has threatened litigation against Kayak if he is not paid for the alleged infringement.

27. An actual and justiciable controversy exists between Kayak and King with respect to the infringement of the '159 registration, the www.kayak.travel domain, and alleged unfair competition by Kayak.

## COUNT I
### (Declaratory Judgment of Trademark Non-Infringement Under 15 U.S.C. § 1114 and Common Law)

28. Kayak incorporates the allegations of Paragraphs 1-27 by reference.

29. Kayak has not infringed and is not infringing, either directly or indirectly by inducement or contributory infringement, either the '159 registration nor any common law rights King alleges he has in the mark KAYAK ANGLING.

30. Kayak is entitled to a declaratory judgment that it has not infringed the '159 registration or any alleged common law rights owned by King.

## COUNT II
### (Declaratory Judgment of No Unfair Competition)

31. Kayak incorporates the allegations of Paragraphs 1-30 by reference.

32. King has accused Kayak of engaging in unfair competition under 15 U.S.C. § 1125(a) and California Bus. & Prof. Code § 17200, *et seq.*

33. Kayak has not committed unfair competition against King.

34. Kayak is entitled to a declaratory judgment that it has not committed unfair competition against King under 15 U.S.C. § 1125(a), California Bus. & Prof. Code § 17200, *et seq.*, or at common law.

## COUNT III
### (Trademark Infringement Under 15 U.S.C. § 1114 and Common Law)

35. Kayak incorporates the allegations of Paragraphs 1-34 by reference.

36. Kayak owns United States Trademark Registrations numbered 3,410,425, 3,209,578, 3,129,154, and 3,110,651, and has common law rights in the KAYAK Marks.

37. King uses a colorable imitation of Kayak's KAYAK Marks in commerce as a service mark in association with his www.kayak.travel website.

38. King's use of the imitation is without permission of Kayak and is likely to cause confusion or mistake or to deceive. King is therefore liable to Kayak for trademark infringement under 15 U.S.C. § 1114 and at common law.

39. Upon information and belief, such use by King knowingly and willfully trades on the good will established by Kayak in its KAYAK Marks.

40. Kayak has been damaged by such conduct in an amount to be determined at trial.

41. Unless stopped by an injunction, King's behavior will continue and will cause Kayak to suffer irreparable harm for which there is no adequate remedy at law. Therefore, Kayak is entitled to injunctive relief. It is also entitled to damages for the infringement.

## COUNT IV
### (False Designation of Origin Under 15 U.S.C. § 1125(a))

42. Kayak incorporates the allegations of Paragraphs 1-41 by reference.

43. Kayak's KAYAK Marks are recognized for quality in the on-line travel searching services industry.

44. King's www.kayak.travel website is available to and aimed at a similar class of consumers as Kayak's services are.

45. On information and belief, King's use of a mark confusingly similar to Kayak's KAYAK Marks has the effect of associating King or his services with Kayak's KAYAK Marks in the minds of the purchasing public, thereby trading off the good will acquired by Kayak.

46. King's actions are likely to cause confusion or mistake, or to deceive as to the affiliation, connection or association of King with Kayak as to the origin, sponsorship or approval of King's website by Kayak, entitling Kayak to relief under 15 U.S.C. § 1125(a).

47. Kayak has been damaged by such conduct in an amount to be determined at trial.

48. Unless stopped by an injunction, King's behavior will continue and will cause Kayak to suffer irreparable harm for which there is no adequate remedy at law. Therefore, Kayak is entitled to injunctive relief. It is also entitled to damages for such false designation of origin.

## COUNT V
### (Cybersquatting Under 15 U.S.C. § 1125(d))

49. Kayak incorporates the allegations of Paragraphs 1-48 by reference.

50. King registered his www.kayak.travel domain name with a bad faith intent to profit from the KAYAK Mark included in the domain name.

51. Unless enjoined, King's behavior will continue and will cause Kayak to suffer irreparable harm for which there is no adequate remedy at law. Therefore, Kayak is entitled to injunctive relief, including transfer of the domain name to Kayak.

## COUNT VI
### (Common Law Unfair Competition)

52. Kayak incorporates the allegations of Paragraphs 1-51 by reference.

53. By the above-described conduct, King has engaged in unfair competition under common law.

54. Kayak has been damaged by such conduct in an amount to be determined at trial.

55. Unless stopped by an injunction, King's behavior will continue and will cause Kayak to suffer irreparable harm for which there is no adequate remedy at law. Therefore, Kayak is entitled to injunctive relief. It is also entitled to damages for such conduct.

## COUNT VII
### (Tortious Interference with Prospective Business Relationships)

56. Kayak incorporates the allegations of Paragraphs 1-55 by reference.

57. Kayak has prospective business relationships with the various entities assisting it with its initial public offering, as well as its current and future investors in the public offering, with the probability of future economic benefits for Kayak.

58. King knew about Kayak's prospective business relationships with the entities assisting Kayak with its initial public offerings, and Kayak's current and future investors.

59. By threatening to file suit against Kayak and these entities and investors, King is seeking to intentionally induce or cause them not to enter into or continue the existing and prospective relationships, or prevent Kayak from acquiring or continuing the prospective relationships.

60. King's interference, in addition to being intentional, has been improper in motive or in means.

61. Kayak has been harmed by King's actions.

62. Unless stopped by an injunction, King's behavior will continue and will cause Kayak to suffer irreparable harm for which there is no adequate remedy at law. Therefore, Kayak is entitled to injunctive relief. It is also entitled to damages for such conduct.

## COUNT VIII
### (Tortious Interference with a Public Offering)

63. Kayak incorporates the allegations of Paragraphs 1-62 by reference.

64. Kayak is in the process of making a public offering.

65. King knew about Kayak public offering.

66. By the above-described conduct, King is deliberately and intentionally seeking to interfere with that public offering.

67. King's interference, in addition to being intentional, has been improper in motive or in means.

68. Kayak has been harmed by King's actions.

69. Unless stopped by an injunction, King's behavior will continue and will cause Kayak to suffer irreparable harm for which there is no adequate remedy at law.  Therefore, Kayak is entitled to injunctive relief.  It is also entitled to damages for such conduct.

### COUNT IX
### (Unfair and Deceptive Trade Practices Under Mass. Gen. L. ch. 93A)

70. Kayak incorporates the allegations of Paragraphs 1-69 by reference.

71. King is, and was at all relevant times, engaged in commerce in Massachusetts, as set forth above.

72. King's acts as described above constitute unfair and deceptive acts and practices in violation of Mass. Gen. L. ch. 93A.

73. On information and belief, King's unfair and deceptive acts and practices occurred primarily and substantially within Massachusetts.

74. On information and belief, King's acts as described above were willful and knowing.

75. Kayak has been harmed by such actions and is entitled to damages as set forth in Ch. 93A.

## **RELIEF REQUESTED**

For the above reasons, Kayak prays that the Court declare and a judgment be entered that:

A.   The Court has jurisdiction over the parties and subject matter of this action;

B.   Kayak has not infringed and is not infringing the '159 registration or any of King's alleged common law rights;

C.   Kayak has not committed and is not committing unfair competition under 15 U.S.C. § 1125(a), California Bus. & Prof. Code § 17200, *et seq.*, or at common law;

D.   Kayak's asserted trademark registrations above are valid and subsisting and are infringed by King and further that King has committed false designation of origin, cybersquatting, unfair competition, tortious interference with prospective business relationships, tortious interference with a public offering, and has violated Mass. Gen. L. ch. 93A;

E.   King, as well as all his agents, representatives, employees, assigns and all persons acting in concert or privity with him, are preliminarily and permanently enjoined from maintaining, using, disseminating, reproducing, promoting, distributing or otherwise using the mark KAYAK, or any mark confusingly similar thereto, and is permanently enjoined from using the mark KAYAK, or any mark confusingly similar thereto, as all or part of any mark, product configuration, or design;

F.   King's infringement, false designation of origin, cybersquatting, unfair competition, and tortious interference have been willful;

G.   King shall deliver to Kayak or to the Court for destruction all materials bearing the infringing marks or colorable copies of Kayak's marks;

H.   King shall file and serve a report in writing, and under oath, setting forth the manner and form in which he has complied with the Court's order and injunction;

  I. King shall transfer to Kayak the www.kayak.travel domain name, and any other domain names for which he is named as registrant that contain the mark KAYAK;

  J. King shall pay to Kayak any damages attributable to King's infringement of Kayak's marks and his acts of cybersquatting, unfair competition, and tortious interference, and shall account for all gains, profits, and advantages derived through those actions, but not less than a reasonable royalty, and pay such damages authorized by law, including 15 U.S.C. § 1117;

  K. King shall pay damages, and such multiple damages up to three times actual damages as may be awarded by the Court pursuant to Mass. Gen. L. ch. 93A, 15 U.S.C. § 1117, or other applicable law;

  L. King shall pay Kayak its reasonable costs and attorneys' fees under Mass. Gen. L. ch. 93A, 15 U.S.C. § 1117, or other applicable law; and

  M. Kayak shall have such other and further relief as this Court may award.

### JURY DEMAND

Kayak demands a trial by jury of all issues so triable.

            KAYAK SOFTWARE CORPORATION,

            By its attorneys,

Dated: March 4, 2011      /s/ Michael A. Albert
            Michael A. Albert, BBO # 558,566
            malbert@wolfgreenfield.com
            Hunter D. Keeton, BBO # 660,609
            hkeeton@wolfgreenfield.com
            WOLF, GREENFIELD & SACKS, P.C.
            600 Atlantic Avenue
            Boston, Massachusetts 02210
            Tel.  617 646.8000
            Fax.  617 646.8646